**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OMAR GOMEZ-ALAMILLA, a/k/a
Omar Almaya Renedomeo, a/k/a Omar
Gomez Alamilla, a/k/a Rene Marshal
Domeq, a/k/a Omar Gomez-Alamillo,
a/k/a Rene Domeq, a/k/a Omar
Alamellla Gomez, a/k/a Rene Dumeo,
a/k/a Omar Almaya Gomez, a/k/a
Omar Alamilla, a/k/a Omar Gomez,
a/k/a Rene Marshal, a/k/a Rene
Marshall Domeq, a/k/a Omar
Alamilla Gomez, a/k/a Omar Alamillo,

Defendant-Appellant.

No. 11-5021
(D.C. No. 4:10-CR-00135-CVE-1)
(N.D. of Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Omar Gomez-Alamilla, a federal prisoner, appeals his 46-month sentence for illegally reentering the United States after deportation. He contends the district court erred in applying a 16-level sentencing enhancement under United States Sentencing Guidelines (USSG) § 2L1.2(b)(1)(A), and he challenges the substantive reasonableness of his sentence. After a thorough review of the record, we find both claims lack merit.

Therefore, exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM Gomez-Alamilla's sentence.

## I. Background

In 1988, Gomez-Alamilla was convicted of a felony drug crime and, as a result, was deported to Mexico. Not long after being deported, he illegally reentered the United States, where he was arrested and convicted for possession of a controlled substance and receiving stolen property. Gomez-Alamilla was again deported, and he again illegally reentered the United States. In 2001, he was arrested and charged with multiple cocaine offenses and possession of a firearm during a felony. After again being convicted of illegal reentry, he was deported to Mexico for a third time. He returned to the United States once again. Finally, in 2010, Gomez-Alamilla was arrested in Oklahoma for driving under the influence.

Gomez-Alamilla pleaded guilty to illegally reentering the United States after having been previously deported, in violation of 8 U.S.C. §§ 1326(a) and

1326(b)(2).  The presentence investigation report (PSR), which the district court adopted, detailed Gomez-Alamilla's numerous prior convictions.  Pursuant to the report, the district court calculated that Gomez-Alamilla's base offense level was 8, but because he had previously been deported after a conviction for a felony drug trafficking offense, the court applied a 16-level enhancement pursuant to USSG § 2L1.2(b)(1)(A).  The court also granted Gomez-Alamilla a 3-level reduction for acceptance of responsibility.

Accordingly, based on his total offense level of 21 and criminal history category of III, Gomez-Alamilla's advisory sentencing range was 46 to 57 months' imprisonment.  Gomez-Alamilla objected to the 16-level enhancement and filed a motion for a variance below the advisory guideline range.  The district court overruled the objection, denied Gomez-Alamilla's motion for a variance, and imposed a 46-month sentence.

## II.  Discussion

Gomez-Alamilla challenges (1) the district court's application of a 16-level enhancement under § 2L1.2(b)(1)(A), and (2) the substantive reasonableness of his sentence.  Neither argument is meritorious.

### A.    16-Level Enhancement

The foundation for the enhancement traces back to Gomez-Alamilla's first relevant conviction.  In 1988, he was sentenced to three years' imprisonment for violating California Health & Safety Code § 11351, which makes it a felony to

-3-

"possess[] [a controlled substance] for sale or purchas[e] [a controlled substance] for purposes of sale." The district court determined this was a "drug trafficking offense" under § 2L1.2(b)(1)(A), such that a 16-level enhancement was appropriate. Gomez-Alamilla disputes this classification. Specifically, he contends the California statute is ambiguous and, accordingly, that the district court should have applied a modified categorical approach to determine whether his conviction qualified as a drug trafficking offense.

Before the district court, Gomez-Alamilla contested the 16-level enhancement, but he did so only on the vague basis that "there [was] insufficient information to ascertain whether or not his conviction was a drug trafficking offense." Aplt. Br., Ex. 4 at 1. Because Gomez-Alamilla now takes a fundamentally different tack—challenging the clarity of the statute and the district court's interpretive approach—the district court did not have the opportunity to consider his specific objections and, if necessary, correct its ruling. Accordingly, we review only for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009).

Under plain error review, we may not reverse unless we find "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, [we] may then exercise [] discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *United States v. Balderama-Iribe*, 490 F.3d 1199, 1204 (10th Cir.

-4-

2007) (quotation omitted). Under the third prong, the error affects substantial rights only if it has affected the outcome of the district court proceedings. *Morales-Fernandez v. INS*, 418 F.3d 1116, 1124 (10th Cir. 2005). Gomez-Alamilla bears the burden of demonstrating plain error. *Id.*

Defendants are subject to 16-level enhancements under § 2L1.2(b)(1)(A) of the Guidelines if they have been previously deported for "a drug trafficking offense for which the sentence imposed exceeded 13 months." A drug trafficking offense is defined as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense." § 2L1.2 cmt. n.1(B)(iv).[1] Accordingly, the task for the district court was to decide whether this definition encompasses Gomez-Alamilla's 1988 felony for "possess[ing] [a controlled substance] for sale or purchas[ing] [a controlled substance] for purposes of sale." Cal. Health & Safety Code § 11351.

In deciding whether Gomez-Alamilla's past conviction triggered an enhancement under § 2L1.2(b)(1)(A), the district court was required to employ

---

[1] In interpreting the Guidelines, we look "at the language in the guideline itself, as well as the interpretive and explanatory commentary to the guideline provided by the Sentencing Commission. Commentary to the Guidelines is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010) (quotations omitted).

one of two analytical approaches: the "categorical approach" or the "modified categorical approach." The categorical approach is appropriate if the statute of conviction encompasses only conduct triggering enhancements under § 2L1.2(b)(1)(A). Under the categorical approach, a sentencing court "looks to the words of the statute and judicial interpretations of it, rather than to the conduct of any particular defendant convicted of the crime." *United States v. Armijo*, — F.3d —, No. 09-1533, 2011 WL 2687274, at *2 (10th Cir. July 12, 2011) (quotation omitted); *see also Taylor v. United States*, 495 U.S. 575, 600–02 (1990). Thus, it is irrelevant "how an individual offender might have committed [the crime] on a particular occasion." *Armijo*, 2011 WL 2687274, at *2. "To satisfy th[e] categorical approach, it is not necessary that every conceivable factual offense covered by a statute fall within [the sentencing enhancement]." *United States v. Smith*, — F.3d —, No. 10-6209, 2011 WL 2714083, at *1 (10th Cir. July 13, 2011) (quotation omitted). Rather, we have held that "the proper inquiry is whether conduct encompassed by the elements of the offense, in the ordinary case, qualifies under the [enhancement]." *Id.* (quotation omitted).

The modified categorical approach, on the other hand, is appropriate when a criminal statute is ambiguous. Indeed, if the statute of conviction encompasses a broad range of conduct—some of which would trigger the enhancement and some of which would not—a court must employ the modified categorical approach. Under the modified approach, a court resolves the statutory ambiguity

by determining under which part of the statute the defendant was convicted; in so doing, a court may "consult[] reliable judicial records, such as the charging document, plea agreement or plea colloquy." *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086 (10th Cir. 2005). Review under the modified categorical approach "does not involve a substantive inquiry into the facts of the case, but rather its purpose is to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." *Armijo*, 2011 WL 2687274, at *2.

At sentencing, the district court used the categorical approach to determine that Gomez-Alamilla's conviction under § 11351 was a drug trafficking offense. Gomez-Alamilla contends this approach was improper, because a "purchase[] for purposes of sale" may, under some circumstances, constitute neither actual nor constructive possession. He argues that because possession is a prerequisite to committing drug trafficking offense under § 2L1.2(b)(1)(a)'s definition, a conviction under § 11351, which may or may not involve possession, must be assessed using a modified categorical approach.

Neither the Supreme Court nor the Tenth Circuit has decided whether the categorical approach is the correct method for assessing convictions under § 11351. For this reason, we need not consider whether the district court's approach was erroneous, because any such error would not have been plain. *United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011) ("[F]or an error to be

-7-

contrary to well-settled law, either the Supreme Court or this court must have addressed the issue."); *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (to show plain error, a defendant must establish that an error, if it occurred, was not "clear or obvious under current law").

Indeed, although we have not ruled on the issue, numerous courts have held that a conviction under § 11351 is fundamentally a drug trafficking offense, such that a court need not assess the specifics of a defendant's charged conduct when deciding whether to apply an enhancement under § 2L1.2(b)(1)(A). *See, e.g.*, *United States v. Morales-Perez*, 467 F.3d 1219, 1223 (9th Cir. 2006); *United States v. Palacios-Quinonez*, 431 F.3d 471, 474 (5th Cir. 2005). For example, the Ninth Circuit decided that because the federal crime of attempted possession of a controlled substance with intent to sell—unquestionably a drug trafficking offense for the purposes of § 2L1.2(b)(1)(A)—encompasses all conduct criminalized by § 11351 (including purchasing narcotics for the purpose of sale), an assessment under the modified categorical approach is unnecessary. *Morales-Perez*, 467 F.3d at 1223. Accordingly, Gomez-Alamilla has failed to meet his burden of showing that the purported error was plain.

Moreover, even if the district court had applied the modified categorical approach, as urged by Gomez-Alamilla, it still would have reached the conclusion that his 1988 conviction qualified as a drug trafficking crime. In his 1988 declaration, Gomez-Alamilla admitted he "possessed heroin for sale on Sept. 15th

-8-

1988.  More than ½ oz."  Aplt. Br., Ex. 10.  Because this document was a "comparable judicial record" of "the factual basis for the plea [which] was confirmed by the defendant," it could have been considered by the district court in assessing Gomez-Alamilla's prior conviction under the modified categorical approach.  *Shepard v. United States*, 544 U.S. 13, 26 (2005).  Therefore, it is plain that Gomez-Alamilla was convicted under the "possession" prong of § 11351, rather than the "purchase for sale" prong.  Because possession of distribution quantities of heroin is unequivocally a drug trafficking offense under § 2L1.2(b)(1)(A), any error in employing the categorical approach was not prejudicial.

In sum, under any interpretive approach, there is no doubt that Gomez-Alamilla's 1988 conviction was for a drug trafficking crime.  Accordingly, the district court did not plainly err—and even if it did, its failure to apply the modified categorical approach did not affect Gomez-Alamilla's substantial rights.

**B.	*Substantive Reasonableness***

Gomez-Alamilla also contends his 46-month sentence is substantively unreasonable.  He alleges the district court failed to account for: (1) time he served in prison between his state DUI arrest and his federal indictment, (2) his health, (3) the age of his 1988 drug trafficking conviction, (4) his age, and (5) his likely deportation to Mexico after his incarceration.  These contentions are belied by the record, which shows Gomez-Alamilla received a sentence tailored to the

-9-

facts of his crime, based on a conscientious consideration of the 18 U.S.C. § 3553(a) factors.

We review the substantive reasonableness of a defendant's sentence for abuse of discretion. *See United States v. Mancera-Perez*, 505 F.3d 1054, 1058 (10th Cir. 2007). Under this deferential standard, we may overturn Gomez-Alamilla's sentence only if the district court's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation omitted). In this regard, we assess whether his sentence is reasonable "given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (quotation omitted). Because Gomez-Alamilla's sentence is within a properly calculated guidelines range, we presume it to be reasonable. *United States v. Verdin-Garcia*, 516 F.3d 884, 898 (10th Cir. 2008).

Gomez-Alamilla has not rebutted the presumption of reasonableness. Notably, in addition to carefully weighing the § 3553(a) factors, the district court expressly considered and rejected all the arguments Gomez-Alamilla makes here. For example, before pronouncing a sentence, the court took into account the dangers of deportation to Mexico and Gomez-Alamilla's health concerns. In fact, the court recommended that Gomez-Alamilla, in connection with serving his sentence, "be initially designated to a medical facility for evaluation and treatment of his medical conditions, including hepatitis C." R., Vol. III at 18.

Moreover, the court recognized the potential staleness of the 1988 conviction but rejected Gomez-Alamilla's argument because he had once before received a downward departure based on the age of the conviction, but that departure "did nothing to deter him from committing the same offense again," given his subsequent illegal reentry into the United States. *Id.* at 16. Finally, the district court indicated that but for Gomez-Alamilla's uncredited jail time, it would have imposed a 48-month sentence; in reality, the court imposed a 46-month sentence to account for Gomez-Alamilla's time served.

Furthermore, the district court carefully accounted for the § 3553(a) factors, including the "nature of the offense, the defendant's personal characteristics, and his extensive criminal history which has been ongoing for more than 30 years." *Id.* at 16. The court also "afforded equal weight to the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment." *Id.* The court concluded that a bottom-of-the guidelines sentence was appropriate in light of the "nonviolent nature of the [] offense, the significant amount of time afforded under the sentencing guidelines . . . , and the fact that the defendant [would] likely be deported following his term of imprisonment"—even though Gomez-Alamilla's "extensive criminal history and repeat unauthorized reentry" justified an above-guidelines sentence. *Id.* at 17.

Accordingly, Gomez-Alamilla's sentence is substantively reasonable.

### III.  Conclusion

For the reasons discussed above, we AFFIRM Gomez-Alamilla's sentence.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge